The plaintiffs, the Mayor of Youngstown, Ohio, and the City itself (City), have sued the United States for breach of contract and for taking the City’s property without just compensation. The Government has moved for summary judgment, and supported the motion with numerous affidavits and documentary exhibits. Almost all of the statements in the documents and the affidavits remain uncontroverted. Neither a trial nor oral argument is warranted. We hold for defendant.
The case stems from the interface between two dams. The City owns the Lake Milton Dam and Reservoir, which it built, some 20 miles from the City, in about 1916. Its major use has been recreational. In 1941-1943, pursuant to the enactment of the Flood Control Act of 1936, 33 U.S.C. § 701 (1976 amended & Supp. Ill 1979), the Army Corps of Engineers (Corps) built the Berlin Dam and Reservoir. Located upstream from Lake Milton, it was designed to provide flood control along the Mahoning River. Water flows from the Berlin Reservoir into the Mahoning River and then through the Milton Reservoir and Dam.
In 1954, the Corps and the City agreed to a "Plan for the Coordination of Berlin and Milton Reservoirs” (Plan). The Plan provides for an exchange of information regarding, *487 among other things, weather conditions and water surface elevation. Under the Plan, the Corps, after analyzing the data, is to tell the City of any proposed adjustments of outflow for Berlin Dam and make recommendations for the outflow from Milton Dam. But the Plan explicitly provides for the City to give all operating instructions directly to the damtender at Milton Dam, and the Government to do the same at Berlin Dam.
The Milton Reservoir and Dam have deteriorated significantly, and now require costly repairs. The City attributes this deterioration to the Government’s operation of the Berlin Dam, and demands governmental assistance in the repairs. In this suit, plaintiffs have asserted claims based on breach of contract, violation of the fifth amendment takings clause, and interference with riparian rights.
1. The City’s first assertion is that the Corps has breached a contractual agreement to control and to help repair the shoreline and Milton Dam. The Government agrees that an agreement exists, but insists that it obligates the Corps only to provide information to the City. From the face of the agreement, it is clear that no express provision obligates the Corps to assist in the repair of any deterioration of the reservoir shoreline. Nor does the Plan, in its terms, obligate the defendant to control or maintain the Milton Dam. To the contrary, the Plan requires the Corps simply to recommend operating procedures to the City. The latter retains direct control over instructions to be given to the damtender. We cannot find, therefore, that the Plan explicitly creates any of the obligations alleged to have been breached by defendant.
It is also alleged, however, that an implied contract exists,[1] but no documents or affidavits are offered to support this contention. Rule 101(f) requires that where one party has moved for summary judgment, and supported its motion with documents and affidavits, the other party (here the plaintiffs) "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as *488 otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.” 28 U.S.C. Rules of Court of Claims, Rule 101(f) (1976). Claimants’ response does not meet this standard because it merely realleges that the Plan obligates the defendant to help repair the dam and shoreline.
In any event, the City alleges only one fact that could conceivably imply the existence of a contract obligating the Corps beyond the scope of the express terms of the Plan. This is that the Corps includes the Milton Dam within its overall flood control plan. But the Government’s uncon-tradicted documents show that the Milton Dam, in its present condition (lacking fully operational floodgates), hinders rather than helps the Corps in its flood control and low-water augmentation efforts, Furthermore, the Corps included the Milton reservoir in its calculations of reserve water supply only after being requested to do so by the City. On the present record, the Corps could plainly achieve its flood control objectives without any assistance from the Milton Dam.
Moreover, even if the Government did bargain to include the Milton Dam within its scheme, there is no indication that the Corps obligated itself to contribute to the normal repairs of that dam. We cannot conclude from the mere fact that the Corps'includes Milton reservoir’s reserve capacity in its calculations that there is an implied-in-fact contract creating any obligations other than those described expressly in the Plan.
Plaintiffs offer us nothing more. They point to no other conduct of the Corps (either before or after the date of agreement) that would indicate the existence of a contract obligating the Corps to repair the dam. In order to find an implied-in-fact contract, there must be some facts from which to imply the contract. The City has alleged or offered to show no such facts. Rather, the record is the other way. The City recently attempted to get the Corps to enter a new agreement under which the Corps would be obligated to repair the Milton Dam, but defendant refused. The City’s own conduct tends to indicate that no implied-in-fact contract now exists.
*489 2. Alternatively, invoking a takings theory, plaintiffs assert that the Corps’ operation of the Berlin Dam has harmed, and continues to harm, the City’s reservoir and dam. As for the reservoir, the Corps’ affiants assert that the damage to the shores of the Milton reservoir results from the rise and fall of the water in the lake. The City does not deny this contention by affidavit, as required by Rule 101, or even by allegation.[2] On the other hand, it appears that the City’s former Commissioner of water requested that lake levels be stabilized to prevent water level fluctuations from eroding the shores. The Corps’ affidavits also establish that the presence and operation of the Berlin Dam have reduced the variation in the reservoir water levels. The City again fails to deny that contention in any proper way. We must conclude, therefore, that the operation of the Berlin Dam has not increased shoreline erosion; instead, it has decreased erosion.
The City also alleges the operation of the Berlin Dam has harmed, not only the reservoir, but the Milton Dam itself. There is no adequate description of how such harm has occurred, but, presumably, plaintiffs blame the Corps for either increasing the variations in the water level, or increasing the average water level. The City can win on neither theory. If damage has been caused by water level fluctuations, the Corps is not responsible; as we have said, the uncontested affidavits establish that the water levels have been stabilized by the operation of the Berlin Dam. If damage has been caused by an increase in the average level of water being held back by the dam, the City has no one to blame but itself; it requested that the Berlin Dam be operated in such a way that the Milton reservoir levels could be kept high for recreational purposes. Furthermore, the City, not defendant, had direct control of the Milton floodgates and could lower the water levels if it so desired. The damage to either the Milton Dam or the reservoir, *490 therefore, is not attributable to defendant’s operation of the Berlin Dam.[3] In sum, on the record before us, the City has no supportable claim under the fifth amendment.
3. The petition alleges invasion of the City’s riparian rights, but the response to the Government’s motion does not discuss that aspect of the claim. We need note only that we have no jurisdiction over actions sounding in tort, and plaintiffs make no allegation that the claim is otherwise.
For these reasons, the Government’s motion for summary judgment is granted and the petition is dismissed.

 It is not clear whether plaintiffs allege a contract implied in fact or one implied in law. Because we have jurisdiction over contracts implied in fact, but not over those implied in law, we assume plaintiffs are claiming only the former. 28 U.S.C. § 1491 (amended Supp. III 1979); Algonac Mfg. Co. v. United States, 192 Ct. Cl. 649, 674, 428 F.2d 1241, 1256(1970).

 The City’s affiant says summarily that the data relied on by the Corps "is incomplete in that it only reflects data taken for certain years while eliminating others.” This is insufficient even if true. Defendant has adequately explained its method and why it selected certain dates; plaintiffs have given us nothing further to suggest that this method is improper.

 In addition, the Government’s affidavits assert in some detail the benefits to the City’s reservoir and dam from the operation of the Berlin Dam, benefits which are said to outweigh any possible detriments. There is no denial of these assertions. Under United States v. Sponenbarger, 308 U.S. 256, 266 (1939), there could be no taking on these facts.